2025 IL App (2d) 240642-U
Nos. 2-24-0642 & 2-24-0643 cons.
Order filed March 6, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* RY. B., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 21-JA-33 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Christina C., Respondent- | ) | Kathryn D. Karayannis, |
| Appellant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| *In re* RM. B., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 21-JA-34 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Christina C., Respondent- | ) | Kathryn D. Karayannis, |
| Appellant). | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Under the procedure set forth in *Anders*, there are no issues of arguable merit on appeal. We therefore grant court-appointed counsel's motion to withdraw as counsel on appeal and affirm the judgment of the circuit court terminating respondent's parental rights to the minors.

¶ 2        On October 1, 2024, the circuit court of Kane County found respondent, Christina C., unfit to parent two of her minor children, Ry. B. (born June 4, 2012) and Rm. B. (born July 31, 2015). The same day, the trial court determined that it was in the best interests of the minors that respondent's parental rights be terminated.[1] Respondent separately appealed the trial court's order with respect to each minor.

¶ 3        The trial court appointed counsel to represent respondent on each appeal. We granted appellate counsel's motion to consolidate the appeals. Subsequently, appellate counsel moved to withdraw from both appeals pursuant to the procedure set forth in *Anders v. California*, 386 U.S. 738 (1968). See *In re Alexa J.*, 345 Ill. App. 3d 985, 987-90 (2003) (holding that *Anders* applies to termination-of-parental-rights cases and outlining the procedure to be followed when appellate counsel seeks to withdraw). Counsel avers that, after a full examination of the record, he is unable to identify any meritorious issues to be raised on appeal which would warrant relief by this court. Counsel has incorporated into his motion a memorandum outlining one potential issue, but ultimately concludes that the potential issue lacks merit. Counsel further avers that he provided respondent with a copy of the motion and that he notified respondent of her opportunity to present additional material to this court within 30 days. The clerk of this court also issued an order, notifying respondent of the motion to withdraw and allowing her 30 days to respond. The 30-day period has passed, and respondent has not filed a response. After carefully reviewing the record and counsel's motion, we agree that there are no issues which would warrant relief by this court.

---

[1] On July 8, 2024, the minors' father, Ray B., executed a final and irrevocable consent to adopt for each minor, thereby voluntarily surrendering his parental rights to Ry. B. and Rm. B. Although Ray is not a party to this appeal, information related to him is included in this decision, where necessary, to provide context to respondent's appeal.

Accordingly, we grant appellate counsel's motion to withdraw and affirm the judgments of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5        On February 17, 2021, the Illinois Department of Children and Family Services (DCFS) received a call reporting injuries to the minors. Upon being interviewed, Ry. B. told the police that his father, Ray B., had struck him with a belt causing injuries. Rm. B. made similar statements. The minors also indicated that Ray forced them to stand outside in the winter without coats and shoes. Respondent did not protect the minors despite these actions occurring over a period of time. On February 24, 2021, the State filed a petition for adjudication on behalf of each minor. Each petition alleged that the respective minor was abused pursuant to sections 2-3(2)(i), (ii), and (v) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(2)(i), (ii), (v) (West 2020)) and neglected pursuant to sections 2-3(1)(a) and (b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(a), (b) (West 2020)).

¶ 6        At a shelter care hearing on February 25, 2021, respondent and Ray stipulated that probable cause existed to proceed with the petitions for adjudication, thereby requiring the urgent and immediate removal of the minors from the home. The court placed the minors in the temporary custody of DCFS and scheduled an adjudicatory hearing. The court also appointed CASA of Kane County as the guardian *ad litem* (GAL) for the minors. The minors were initially placed with Ramona B., the paternal grandmother. The parents were allowed supervised visitation at the discretion of DCFS.

¶ 7        At a hearing on May 6, 2021, the trial court, relying on a factual basis submitted by the State and a stipulation by respondent, found the minors to be abused and neglected. At a dispositional hearing on May 18, 2021, the trial court found that it was in the best interests of the

minors that they be made wards of the court. Further, the court determined that, for reasons other than financial circumstances alone, respondent was unfit and unable to care for, protect, educate, train, supervise, or discipline the minors. The court advised respondent that she would need to participate in services to address the reasons the case came into care, including trauma-informed focus therapy, parenting education, parenting coaching, housing support services, and family therapy when clinically recommended. The court also informed respondent that she would have to obtain and maintain stable housing, complete a domestic-violence assessment, and visit the minors. The court set the permanency goal as return home in 12 months. DCFS assigned Youth Service Bureau (YSB) as the agency for the case.

¶ 8    A series of permanency-review hearings was held between February 2022 and February 2024. During that time, the court found that while respondent had made some efforts, she was not making reasonable progress. The court noted that respondent had moved to Indiana. While residing in Indiana, respondent commenced individual therapy, but she had not completed a recommended psychiatric examination which was needed to progress in therapy. Further, although respondent had been visiting with the minors virtually, she had not been making in-person visits. Respondent returned to Illinois in December 2022, but had issues participating in services due to transportation problems, her work schedule, and the minors' school schedule. In January 2023, foster care of the minors was transferred to Caroline J. (the minors' paternal aunt) and Caroline's husband. Although respondent attended in-person visits, the minors indicated that they did not want to see respondent because of remarks she made to them during visits. By December 2023, respondent's visitation had been suspended following a clinical review. The caseworker informed the court that the suspension was due to the minors' need for stabilization and the negative impact the visits had on their behavior, as reported by their therapists and schools.

¶ 9    At a permanency-review hearing on February 22, 2024, the State expressed concern over the lack of progress in respondent's services, noting that temporary custody had been in place for 1,092 days, visitation was suspended because it was not therapeutically recommended, and family therapy had yet to begin. The State further noted that respondent's participation in other services had been inconsistent, so new referrals had to be made, with respondent finally re-engaging in individual therapy the previous month. The State argued that this was not acceptable given that the minors had been in care for more than 1,000 days. The State asked the court to find that respondent was not making progress and to set a substitute care goal for the minors. The attorney for CASA concurred with the State's argument and recommendation. Counsel for respondent noted that respondent was participating in services, had obtained housing, and is employed. Counsel requested that the court "allow [respondent] an opportunity to make more progress in those services and continue the goal at return home." The trial court considered the parties' arguments and noted that the caregiver for the minors is willing to provide permanency. The court further noted that the minors wrote a letter indicating that they felt safe and secure in their foster placement. The court found that while respondent had made some efforts, they were not reasonable given the length of time the case has been in care (approximately three years), the fact that respondent had been referred repeatedly for individual therapy but just began that service, and visitation had been suspended. The court therefore changed the permanency goal to substitute care pending determination of a petition to terminate parental rights.

¶ 10    On March 25, 2024, the State filed separate petitions to terminate parental rights with respect to each minor. The State cited the following grounds why respondent is an unfit person to have a child: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) failure to protect the minors from

conditions within their environment that were injurious to the minors' welfare (750 ILCS 50/1(D)(g) (West 2022)); and (3) failure to make reasonable efforts to correct the conditions which were the basis for the removal of the minors from her, or to make reasonable progress towards the return of the minors to her during any nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1(D)(m)(i), (ii) (West 2022)). With respect to the third ground, the State listed three separate nine-month periods: (1) November 20, 2021, through August 20, 2022; (2) August 21, 2022, through May 21, 2023; and (3) May 22, 2023, through February 22, 2024. The State further alleged that it was in the best interests and welfare of the minors that respondent's parental rights be terminated. A hearing on the State's petitions to terminate respondent's parental rights was held over several dates, beginning on July 15, 2024.

¶ 11    At the unfitness phase of the termination proceeding, the State called three witnesses: (1) Kelly Scott, a foster care supervisor for YSB; (2) Jamie Mowers, a caseworker for YSB; and (3) respondent. The State also submitted several exhibits, including multiple client service plans, certified records and reports from various agencies, and the integrated assessment. In addition, the State asked the court to take judicial notice of various documents, including the minors' birth certificates, the temporary custody orders, the adjudicatory orders, the dispositional orders, and the permanency review orders. After the State rested, respondent testified on her own behalf. Respondent also called Tiana M., her adult daughter.

¶ 12    On October 1, 2024, following closing arguments by the parties, the trial court issued its ruling relative to the issue of respondent's unfitness. Initially, the court found that the testimony of the agency workers was credible. The court found respondent's testimony was "largely self-serving while credible in certain spots [and] not credible in others." The court noted, for instance, that respondent failed to remember significant events, such as telling DCFS that the minors' father

was physically violent with her. Moreover, while respondent testified that she participated in individual therapy in Indiana, she was unable to show proof of her participation.

¶ 13    The court found that the State had proven by clear and convincing evidence that respondent is unfit to have a child based on all grounds set forth in the petitions to terminate parental rights. The court found that respondent failed to show a reasonable degree of interest, concern, or responsibility as to the minors' welfare by moving out of Illinois, not timely participating in recommended services, not making sufficient progress in recommended services, and not visiting the minors regularly. The court found that respondent failed to protect the minors from conditions within their environment that were injurious to the minors' welfare because respondent chose to leave the minors with their father despite knowing he was short tempered and abusive to respondent. The court also cited testimony from respondent that Ray engaged in discipline practices with which respondent did not agree. The minors were then subjected to severe abuse in their father's care from which respondent failed to protect them. In addition, the court found that respondent failed to make any progress during any of the nine-month periods cited in the State's petitions. The court noted that respondent failed to complete services. Further, respondent visited the minors only sporadically and the minors were struggling with the limited contact they had with their parents. Moreover, respondent never moved to increased or unsupervised visits and her visits were eventually suspended. The court also observed that, while testifying, respondent was unable to explain why the minors were removed from her care and she expressed that she had nothing to do with the minors' removal. The court found that this demonstrated a lack of progress in services. The court then turned to the best-interests phase.

¶ 14    At the beginning of the best-interests phase, the court, at the State's request, admitted reports prepared by YSB and CASA. In the reports, both CASA and YSB recommend that

respondent's parental rights be terminated to allow the minors to achieve their goal of permanency. Neither the State nor CASA presented any additional evidence. Respondent testified on her own behalf and presented the testimony of Tiana. In rebuttal, the State called Mowers to testify.

¶ 15    Following arguments by the parties, the trial court concluded that it is in the best interests of the minors that respondent's parental rights be terminated. The court noted that the minors have been in care for more than 3½ years and they have resided with the current foster family for a year and 10 months. Both minors are happy in their foster placement and have expressed that they want to remain with the foster family. The court further determined that the foster family provides a stable, loving, and safe home. The minors feel love and attachment at their foster home, and they refer to the foster parents as "mom" and "dad." Moreover, the minors have significant needs and are doing well in their foster placement. They are making progress in therapy services and schooling. The court noted that the minors have contact with the paternal side of the family and that the foster family supports contact with the biological parents and the maternal side of the family when it can be done safely. The court also pointed out that the minors' behavior regulated once visits with respondent ceased. The court stated that the minors need stability and continuity. The therapist indicated that it is not beneficial for the minors to remain in foster care indefinitely. The court therefore granted the State's petitions to terminate respondent's parental rights and changed the permanency goal to adoption. A written order reflecting the court's decision was entered for each minor. This appeal followed.

¶ 16                                   II. ANALYSIS

¶ 17    The Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2022)) sets forth a two-stage process for the involuntary termination of parental rights. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Initially, the State has the burden of proving by clear and convincing evidence that

the parent is unfit under any single ground set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). See 705 ILCS 405/2-29(2), (4) (West 2022); *In re C.W.*, 199 Ill. 2d 198, 210 (2002). If the trial court finds the parent unfit, the State must then show by a preponderance of the evidence that termination of parental rights is in the minor's best interest. See 705 ILCS 405/2-29(2) (West 2022); *In re D.T.*, 212 Ill. 2d 347, 352, 366-67 (2004). On appeal, a court of review will not disturb a trial court's finding as to parental unfitness or a minor's best interests unless it is against the manifest weight of the evidence. *In re N.B.*, 2019 IL App (2d) 180797, ¶¶ 30, 43. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 18    Appellate counsel's motion states that he has thoroughly reviewed the record and has concluded that there are no meritorious issues to be raised on appeal. In accordance with *Alexa J.*, 345 Ill. App. 3d at 987, counsel has identified one potential issue he has considered raising, but which he found not arguably meritorious. That issue is whether the trial court's finding that it would be in the minors' best interests to terminate respondent's parental rights was against the manifest weight of the evidence. Otherwise, counsel states that his review of the record identified no justiciable issue regarding procedural due process or issues of evidentiary introduction, admissibility, or sufficiency.

¶ 19    During the best-interests phase of parental-rights termination proceedings, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The State bears the burden of proving by a preponderance of the evidence that termination of the parent's rights is in the minor's best interests. *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 74. Section 1-3(4.05) of the Juvenile Court Act

(705 ILCS 405/1-3(4.05) (West 2022)) sets forth various factors for the trial court to consider in assessing a minor's best interests. These considerations include: (1) the minor's physical safety and welfare; (2) the development of the minor's identity; (3) the minor's familial, cultural, and religious background; (4) the minor's sense of attachment, including love, security, familiarity, and continuity of relationships with parental figures; (5) the minor's wishes and goals; (6) community ties; (7) the minor's need for permanence; (8) the uniqueness of every family and every child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the minor. As noted above, we review the trial court's best-interests finding under the manifest-weight-of-the-evidence standard. *In re N.B.*, 2019 IL App (2d) 180797, ¶ 43.

¶ 20    In this case, the trial court received evidence at the best-interests hearing that the minors were placed in relative foster care with their paternal aunt and her husband in January 2023. The foster family lives in a single-family home in which the minors share a bedroom. The minors' food and clothing needs are being met at the foster home, and there are no safety concerns. The family has a dog. The minors attend church with the foster parents, regularly read the bible, and have travelled out of state to visit relatives. The minors call the foster parents "mom" and "dad." The minors have expressed a desire to remain with the foster parents, and the foster parents are willing to provide permanency.

¶ 21    The CASA and YSB reports submitted at the best-interests hearing indicate that Ry. B. has become very comfortable sharing his feelings and experiences with his foster parents. Although Ry. B. had been experiencing frequent night terrors related to fears of being returned to Ray, these have begun to become less frequent as his sense of security grows. Further, Ry. B. has successfully transitioned from a therapeutic school he attended since coming into care to the general population of a neighborhood school. Ry. B. does well in school. He takes the bus to school and has made

friends with classmates that live in his neighborhood. In addition, Ry. B. has a pass for the local pool where he enjoys swimming with Rm. B. and has expressed interest in attending summer camp. Although Ry. B. still struggles emotionally with the circumstances that brought him into care, he attends weekly therapy. The foster parents have stated that they are willing to facilitate Ry. B.'s continued attendance at therapy.

¶ 22    The CASA and YSB reports further indicate that Rm. B. is comfortable with the foster family. Rm. B. attends a therapeutic school because of behavioral needs. He has friends at school, but because the school is 40 minutes from the foster home, he does not see them outside of the academic setting. Rm. B. would like to transfer to the local school near his home and is working toward that goal. Rm. B. enjoys swimming with Ry. B. at the local pool and, at the time the CASA report was prepared in July 2024, the foster parents were in the process of enrolling him in summer camp. Because of the trauma that Rm. B. has experienced, he is attending therapy services. The foster family is compliant with providing therapy services. Moreover, the caseworker testified at the best-interest phase of the termination hearing that the foster mother told her that she is willing to allow contact with the parents and other members of the biological family when the minors are ready to do so.

¶ 23    Appellate counsel asserts that familial tie considerations might weigh against a finding that termination is in the minors' best interests (the minors' come from both Hispanic and African-American backgrounds). See 705 ILCS 405/1-3(4.05)(c) (West 2022). However, he adds, other statutory factors weigh in favor of a finding that termination is in the best-interests of the minors. Counsel asserts that in light of the time the minors have been in care, the minors' reluctance to reunify with respondent, the improvement in their dispositions during foster placement, and the fact that the foster parents are willing to allow contact with the biological family when the minors

are ready to do so, he is left without a meaningful argument to support overturning the trial court's determination that it is in the minors' best interests to terminate respondent's parental rights. We agree and conclude that there is no arguable merit to a claim that it was against the manifest weight of the evidence for the trial court to conclude that the termination of respondent's parental rights was in the minors' best interests. Quite simply, based on the testimony and other evidence presented, we have no basis for finding that a conclusion opposite that of the trial court is clearly evident or that the trial court's decision is unreasonable, arbitrary, or not based on the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Accordingly, there is nothing to indicate that the trial court erred in finding that it was in the best interests of the minors to terminate respondent's parental rights.

¶ 24                                    III. CONCLUSION

¶ 25    After examining the record, the motion to withdraw, and the supporting memorandum of law, we agree with appellate counsel that respondent's appeal presents no issues of arguable merit. Thus, we grant the motion to withdraw and affirm the judgments of the circuit court of Kane County.

¶ 26    Affirmed.